RECEIVED
OCT - 9 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| VIDALIA DOCK & STORAGE COMPANY, INC. | CIVIL ACTION NO. 04-1177 |
| VERSUS | JUDGE DOHERTY |
| DONALD ENGINE SERVICE, INC., LAKE CHARLES DIESEL, INC., AND VOLVO PENTA OF THE AMERICAS, INC. | MAGISTRATE JUDGE METHVIN |

### MEMORANDUM RULING

Pending before the Court are the parties' briefs on the issue of subject matter jurisdiction, which was raised by the Court *sua sponte*. For the following reasons, this Court finds that Vidalia Dock & Storage Co., Inc. ("VDSC") has its principal place of business in Vidalia, Louisiana. Therefore, VDSC is a citizen of Louisiana, and there is no complete diversity of citizenship among the parties. As such, this Court does not have subject matter jurisdiction over this case.

### *Factual Background and Procedural History*

VDSC filed suit against defendants on December 22, 2003 in the Eastern District of Louisiana, alleging that it purchased four Volvo Penta TAMD 162C-C engines from Volvo Penta of the Americas Inc. and/or Lake Charles Diesel, Inc. and/or Donald Engine Service, Inc. to re-power the company's towboats. VDSC alleges that the engines have consistently underperformed; broken down as a result of numerous turbocharger failures; sustained constant leakage from the injector lines and from the seals on the engines; and have resulted in early, excessive and extraordinary maintenance, repair, and overhaul expenses to VDSC.[1] In invoking this Court's diversity jurisdiction

---

[1] *See* VDSC's Complaint, ¶ XIII.

pursuant to 28 U.S.C. §1332, VDSC alleges that it is a corporation "organized and existing under the laws of the State of Mississippi" and that its principal place of business is Natchez, Mississippi. The principal places of business of the defendants are the following: (1) Donald Engine Service, Inc. – Vidalia, Louisiana; (2) Lake Charles Diesel, Inc. – Lake Charles, Louisiana; and (3) Volvo Penta of the Americas, Inc. – Chesapeake, Virginia.

During an April 20, 2007 telephone status conference with counsel for all parties, the Court raised *sua sponte* the issue of subject matter jurisdiction. At that time, the Court stayed all discovery in the case except discovery related to the issue of subject matter jurisdiction and sanctions against VDSC for certain failures to cooperate in the discovery process [Doc. 94]. During the telephone conference, the Court issued a briefing schedule related to the issues of subject matter jurisdiction so that the issue of whether this Court has jurisdiction over this case could be decided before the case proceeded further. Those briefs are now before the Court.

VDSC is a family-owned business that owns and operates a towboat service on the Mississippi River. At the time this lawsuit was filed, VDSC owned and operated three towboats: the BETTYE M. JENKINS, SONNY J, and CARLA J. The record shows that VDSC, which is owned and operated by members of the Jenkins family, is incorporated in Mississippi, and its corporate headquarters[2] are located in Natchez, Mississippi. VDSC's three corporate officers and shareholders – Mrs. Bettye M. Jenkins, Mr. Hyde J. "Sonny" Jenkins, and Ms. Carla Jenkins[3] – live in Natchez.

---

[2] It is notable that the "corporate headquarters" and administrative office of VDSC are located in a building behind the Jenkins family home in Natchez, Mississippi.

[3] Carla Jenkins is the daughter of Bettye and Hyde Jenkins.

2

Carla Jenkins reports to work in the Natchez office on a daily basis, but travels to the company's 19-acre facility in Vidalia, Louisiana throughout the day. (Deposition of Mrs. Betty M. Jenkins ("BMJ Depo.")[4], p. 34, l. 23-25; p. 35, l. 1-8). Sonny Jenkins reports directly to the facility in Vidalia, Louisiana every morning. (BMJ Depo. p. 52, l. 14-24). Virginia Hodgens, a bookkeeper and office helper for VDSC on a part-time basis, performs her duties for VDSC in the Natchez, Mississippi office. (BMJ Depo., p. 52, 9-13). The only officer of the company who works only in the Natchez office and does not report to the facility in Vidalia, Louisiana is Bettye Jenkins. However, Bettye Jenkins testified her work for VDSC in Mississippi is limited to an "as-needed" basis, and the majority of her workday is actually spent working for another family-owned business, "Two J Ranch, Inc." (BMJ Depo., p. 52, l. 3-8).

Sales calls and/or orders for the company are received by VDSC employees in the Natchez office. These employees -- usually Virginia Hodgens -- then dispatch the appropriate towboat for the requested service by either radio or cell phone to the facility in Vidalia, Louisiana. (BMJ Depo., p. 37, l.12-25; p. 38, l. 1-3). VDSC owns a radio tower, which is located in Mississippi. (BMJ Depo., p. 64, l. 21-25).

VDSC maintains a Mississippi bank account from which it pays its employees. (BMJ Depo., p. 191, l. 24-25; p. 192, l.1). Virginia Hodgens is VDSC's primary bookkeeper, and she prepares employee checks for Bettye Jenkins' signature. (BMJ Depo., p. 35, l. 21-25; p. 36, l. 1-10). Thus, all payroll services are performed in Mississippi, and all payroll records are stored in Mississippi. (BMJ Depo. p. 191, l. 3-10). VDSC also pays Mississippi state income tax and employment taxes.

---

[4] The deposition of Bettye Jenkins was actually the 30(b)(6) deposition of VDSC. Bettye Jenkins was the designated corporate representative.

(BMJ Depo., p. 101, l. 6-14). Additionally, VDSC includes its Natchez business address and telephone number on all advertisements, correspondence, and invoices, and therefore, customers calling the company to engage its services contact the company in Mississippi. (BMJ Depo., p. 191, l. 18-23).

VDSC's operational facility is located on 19 acres of land owned by VDSC in Vidalia, Louisiana. Although the daily supplies used by VDSC's towboats – including food and fuel -- are purchased in Mississippi, all three towboats are actually loaded, fueled, and crewed at the Vidalia facility prior to every towing service that the company performs for its customers. (BMJ Depo., p. 19, l. 21-25; p. 20, l. 1-4). All barge crews embark and disembark the vessels in Vidalia, Louisiana. (BMJ Depo. p. 32, l. 10-17). The towboats are also docked at the Vidalia facility when they are not in service. (BMJ Depo. p. 66, l. 13-25).

The towboats themselves are VDSC's most valuable assets. Accordingly, from 1999 through 2005, VDSC listed nearly all of its operational assets – including the boats, front end loaders, pumps, steel ramps, steel props, barges, office equipment, battery packs, tug boat engines, and other various equipment – as "Louisiana assets." The only assets that VDSC designates as "Mississippi assets" are several lawnmowers and chain saws, office furniture and equipment, one vehicle, and a radio tower. Bettye Jenkins testified that the stated business purpose of the lawnmowers is to cut the grass at the Vidalia, Louisiana facility. (BMJ Depo., p. 69, l. 10-25; p. 70, l.1-13). Accordingly, in 2003, when this lawsuit was filed, VDSC's tax return listed "Louisiana assets" in the amount of $1,339,692.00 and "Mississippi assets" in the amount of $30,995.00. (BMJ Depo., p. 74, l. 10-19).

Bettye Jenkins testified that VDSC performs fleeting services on both sides of the Mississippi River. Bettye Jenkins testified that most loads are fleeted on the Mississippi side of the river, and

4

then empty loads are fleeted on the Louisiana side of the river. (BMJ Depo. p. 28, l. 24-25; p. 29, l. 1-14).

All of VDSC's employees, except Bettye Jenkins and Virginia Hodges (who work part-time), and Carla Jenkins and Hyde Jenkins (who travel back and forth between Natchez and Vidalia all day), work solely at the Vidalia, Louisiana facility. As such, at the time that the company carried workers compensation insurance, VDSC employees who qualified for such coverage were insured by the Louisiana Workers Compensation Corporation. (BMJ Depo., p. 45, l. 14-25; p. 46, l. 1-21). This did not include the officers of the company (*i.e.*, Bettye, Sonny, and Carla Jenkins), nor did it include Virginia Hodgens. (BMJ. Depo., p. 49, l. 23-25; p. 50, l. 1-14).

VDSC pays the City of Vidalia on a monthly basis for electricity; VDSC pays sales tax on a monthly basis to Concordia Parish, Louisiana, wherein Vidalia, Louisiana is located; VDSC pays property tax on a yearly basis to the Concordia Parish, Louisiana tax assessor for the real property that VDSC owns (the 19 acres on which the VDSC facility sits) in Vidalia, Louisiana; VDSC pays the Louisiana Department of Labor on a regular basis for employees who live in Louisiana; and VDSC makes regular payments to the Louisiana Department of Revenue for withholding on its employees who live in Louisiana. (BMJ Depo., pp. 97-100). VDSC also pays Mississippi employment taxes. (BMJ Depo., p. 101, l. 6-11). VDSC is a member of both the Vidalia and Natchez Chambers of Commerce. (BMJ Depo., p. 97, l. 17-21).

VDSC has been involved in at least six legal proceedings filed in Concordia Parish, Louisiana. In two of those lawsuits, VDSC pled that its principal place of business is in Vidalia, Louisiana. In *Vidalia Dock & Storage Company, Inc. v. Louisiana Workers' Compensation Corporation*, 7th JDC, Parish of Concordia, Louisiana, No. 040677, Div. "B" (the "LWCC

Lawsuit"), VDSC alleged in the first paragraph entitled "JURISDICTION" that it is a Mississippi corporation in good standing, duly registered to operate in the State of Louisiana and having its principal place of business in the state located in Concordia Parish, Louisiana.[5] In *Vidalia Dock & Storage Company, Inc., Bettye Jenkins and Hyde Jenkins v. Dennis Switzer, Hopkins & Mange*, 7th JDC, No. 039725, Div. "B" (the "Switzer Lawsuit"), VDSC alleged that it is a "Mississippi corporation with a principal place of business in Vidalia, Louisiana."[6]

The parties dispute the location of major towboat maintenance and repair services performed by VDSC. Defendants contend that, pursuant to the 30(b)(6) deposition testimony of Betty Jenkins, at the time of removal in 2003, all barge repair employees reported to the Vidalia, Louisiana facility on a daily basis, as they do today, and that all barge repair operations are performed at the Vidalia facility. (BMJ Depo., p. 20, l. 14-22; p. 32, l. 25; p. 33, l. 1-3). With respect to barge maintenance, Bettye Jenkins testified that "[a]ny maintenance that can be done in Vidalia that we can do, we do. We have been on dry dock in Vicksburg, [Mississippi,] Greenwood, [Mississippi,] and Port Allen[, Louisiana]. You know, if it's something that we can handle, we handle in Vidalia. If not, we go to other places." (BMJ Depo., p. 33, l. 5-10). Bettye Jenkins clarified that when the barges are sent to dry dock in Mississippi for barge repair, a third party does the repair work. When VDSC does repair work, that work is done in Vidalia. (BMJ Dpo., p. 33). However, VDSC argues that although there were some barge repairs conducted in 2003, VDSC has since "eventually eliminated" such barge repairs from its business. VDSC contends that, today, repairing and cleaning barges actually

---

[5] See Rec. Doc. 99, Exhibit 9.

[6] See Rec. Doc. 99, Exhibit 16. In the remaining four lawsuits, VDSC was named as a party *defendant* rather than a plaintiff, and therefore, did not invoke the court's jurisdiction by alleging that its principal place of business is in Concordia Parish, Louisiana.

comprises just 0.6% of VDSC's total revenue, suggesting that barge repair is not a significant aspect of VDSC's business operations at this time.

Bettye Jenkins testified that 80% of VDSC's customers are located in Mississippi. (BMJ Depo., p. 195, l. 9-21). With respect to actual sales, however, Jenkins confirmed during the corporate deposition of VDSC that in 2002, VDSC's total sales in Louisiana were $713,869, while the company's total sales in Mississippi were $497,114. (BMJ Depo., p. 196, l. 19-25; p. 197, l. 1).

### *Law and Argument*

Under 28 U.S.C. §1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . ." A corporation may have only one principal place of business for diversity purposes. *J.A. Olson Co. v. City of Winona*, 818 F.2d 401 (5th Cir. 1987). The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998), *citing Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 253-54 (5th Cir.1961).

The citizenship of VDSC is critical; if VDSC's principal place of business is Vidalia, Louisiana, and VDSC is thereby a citizen of Louisiana, there is not complete diversity of citizenship among the parties, and this Court does not have subject matter jurisdiction over this case.

In determining a corporation's principal place of business, the Fifth Circuit has adopted the "total activity test," which requires consideration of two main "focal points:" the location of the corporation's "nerve center" and its "place of activity." *J.A. Olson*, 818 F.2d at 411. The Fifth Circuit has stated that neither the "nerve center" nor the "place of activity" test inflexibly dictates the corporation's principal place of business. Rather, courts are to "examine the totality of the facts,

including the corporation's organization and the nature of its activities, to determine which of these focal points predominates." *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 876 (5th Cir. 2004), citing *J.A. Olson*, 818 F.2d at 406. In the seminal case of *J.A. Olson*, the court noted:

> Thus, neither the nerve center nor the place of activity test inflexibly dictates the corporation's principal place of business. Rather, the tests simply stand for general rules regarding the determination of a particular corporation's principal place of business: the principal place of business of a far flung corporation will generally be its nerve center, *see Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y. 1959); the principal place of business of a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state is generally the district of the former, *see Kelly v. U.S. Steel Corporation*, 284 F.2d 850 (3rd Cir. 1960); and the principal place of business of a corporation with its corporate headquarters in one state and its single activity in another will generally be in the state of its operations, *see Lurie Co. v. Lowe's San Francisco Hotel Corporation*, 315 F.Supp. 405 (N.D.Ca. 1970).

818 F.2d at 409.

In evaluating the "activity" of the corporation in question, the Fifth Circuit considers whether the nature of the activity in question is "active" or "passive," and whether it is "labor-intensive" or "management-demanding." In *J. A. Olson*, the Fifth Circuit reasoned:

> We must consider the number of locations where the corporation carries on its activities; obviously, the *place* of operations of a corporation that carries on a single activity is more significant than one of many *places* of operations of a corporation with diffuse activities. Furthermore, we consider the importance of the particular activity to the corporate purpose and to the corporation as a whole; significant indicators of an activity's importance include the proportionate share of corporate assets, both of money and time, devoted to the activity and the proportion of its income that the corporation derives from that activity. We also see as significant the degree to which the corporation's activities bring it into contact with the community. In examining the corporation's local contacts, we look at the number of employees in the given locale and the extent to which the corporation participates in the community through purchase of products, supplies and services, sales of finished goods, and membership in local trade or other organizations.

818 F.2d at 211-12 (emphasis in original).

According to the Fifth Circuit, the "nerve center" test is primarily limited to situations involving "corporation[s]. . . engaged in far-flung and varied activities which are carried on in different states." *J. A. Olson*, 818 F.2d at 407, *citing Scot Typewriter Co v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y.1959); *Lugo-Vina v. Pueblo Int'l, Inc.*, 574 F.2d 41, 43 n.2 (1st Cir. 1978) ("nerve center" test most appropriate for holding company); *Spector v. Rex Sierra Gold Corp.*, 227 F.Supp. 550, 551 (S.D.N.Y. 1964) ("nerve center" test inapposite to company engaged in one activity in one state). In such situations:

> The nerve center, or corporate offices, will clearly be the principal place of business at which a corporation does business; the corporation's activities are dispersed to the point that no place in which the corporation conducts operations or activities can be denoted "principal."

*J.A. Olson*, 818 F.2d at 407.

On the other hand, the "place of activity" test is often utilized when a company's day-to-day operations and management outweigh the activities and formulation of overall policy. This test was succinctly explained by the court in *Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F.Supp. 405 (N.D.Cal.1970), a case the Fifth Circuit called a "classic case, cited often by the commentaries, that graphically illustrates the dominance of the place of activities over the nerve center as a means of determining principal place of business." *See J. A. Olson*, 818 F.2d at 409. In *Lurie*, the defendant corporation was incorporated in Delaware and had its principal office in New York:

> The corporation had been organized to operate a hotel in California and that was its only activity. Rejecting the use of the "nerve center" test as being applicable only to wide-spread operations in several states, the court noted that *"[w]here . . . the corporation has its physical operations concentrated in one state and its administrative or executive offices in another state, the place of operations is more frequently considered as decisive."* (quoting 1 Moore's Federal Practice, 717.77 ¶ 0.77 [3.-4] ). The court considered the operations in California, which included the corporation's only assets, the vast majority of its employees and responsibility for

9

> day-to-day management, and held them to "outweigh the activities and formulation of overall policy in New York."

*J. A. Olson*, 818 F.2d at 416, *citing Lurie*, 315 F.Supp. at 412 & 416 (emphasis added).

In *J.A. Olson*, the Fifth Circuit noted that although the *Lurie* court chose the corporation's "place of activity" as its principal place of business, it did not "blindly adhere to any formalistic test. Instead, the court balanced the significance of the corporation's activity and policy-making functions and determined that, under these facts, the corporation's principal place of business was its place of activity." *J. A. Olson*, 818 F.2d at 409.

VDSC argues that it is a far-flung corporation, and, therefore, the location of its "nerve center" predominates. VDSC then argues that its "nerve center" is located in Natchez, Mississippi, and that Natchez, Mississippi is, therefore, its principal place of business. On the other hand, defendants argue that the facts of this case are more closely akin to the third category of corporation discussed by the Fifth Circuit in *J.A. Olson*, that is, the corporation with its corporate headquarters in one state and its single activity in another state. Under this test, defendants argue that VDSC's operational activities, which comprise the active, labor-intensive activities of the company, are located in Vidalia, Louisiana, and that Vidalia, Louisiana is VDSC's principal place of business.

### 1.    The "Nerve Center" of VDSC

With regard to the issue of VDSC's "nerve center," the facts show that VDSC is incorporated in Mississippi and its corporate headquarters are located in Natchez, Mississippi; its shareholders and officers live in Natchez, Mississippi; all financial transactions and decisions are conducted in the Natchez, Mississippi office, including all payroll services, and maintenance of payroll records; all employee checks are paid from a VDSC's Mississippi bank account; Mississippi state

10

employment taxes are paid; shareholder meetings are held in Natchez; vendors and customers communicate with the company in Natchez; loaded barges are fleeted on the Mississippi side of the Mississippi River; food and fuel that is loaded onto the towboats is purchased in Mississippi; and VDSC is a member of the Natchez Chamber of Commerce. The Court notes that the foregoing activities are primarily passive and management-demanding.

Considering the majority of personnel and policy decisions are made in the company's headquarters in Natchez, Mississippi, this Court concludes that VDSC's "nerve center" is in Natchez, Mississippi. This finding does not conclude the Court's analysis, as this Court must determine where VDSC's "place of activity" exists.

After consideration of the facts and evidence in this case, this Court rejects VDSC's averment that it is a far-flung corporation. The jurisprudence makes clear that far-flung corporations are more akin to holding companies that are involved in so many different corporate activities that such activities "are dispersed to the point that no place in which the corporation conducts operations or activities can be denoted 'principal.'" Far-flung corporations are not, generally, corporations involved in one activity in one state. *See, e.g., Lugo-Vina v. Pueblo Int'l, Inc.*, 574 F.2d 41, 43 n.2 (1st Cir. 1978) and *Spector v. Rex Sierra Gold Corp.*, 227 F.Supp. 550, 551 (S.D.N.Y. 1964), both cited in *J.A. Olson*, 818 F.2d at 407. VDSC is a company that provides primarily one service – towing barges, with related repair and maintenance of barges to some degree. These services are performed almost entirely in Vidalia, Louisiana. Although VDSC also undertakes fleeting services for companies, some of those fleeting services are performed in Louisiana. Furthermore, while some of VDSC's employees are located in Mississippi, those employees take orders for services that are performed in Louisiana, and/or meet to discuss company policy that is effectuated in Louisiana,

and/or perform payroll services that pay employees that perform the bulk of their work activity in Louisiana. Thus, VDSC is more akin to the third category of corporation discussed in *J. A. Olson*, that is, the company with its executive offices in one state and its operating activities in another state.

Considering the foregoing, this Court concludes that VDSC has its administrative or executive offices in Natchez, Mississippi, which is the location of the company's passive and management-demanding activities. The company's assets and employees, as well as its physical operations – the towing, repair, and maintenance of barges – are concentrated in Vidalia, Louisiana. These activities are active and labor-intensive.

### 2. VDSC's "Place of Activity"

The facts show that VDSC's business enterprise consists of the operation of three towboats that are crewed, fueled, supplied, repaired, and maintained at the 19-acre facility owned by VDSC in Vidalia, Louisiana. All vessel crews embark and disembark at the Vidalia facility, and when not on a job, VDSC's vessels are tied up at the facility in Vidalia, Louisiana. The majority of revenue-generating activity performed by VDSC – that is, the moving and/or towing of all barges and barge maintenance and repair – occurs in Vidalia, Louisiana. These activities are active and labor-intensive and comprise the day-to-day operational activities of the company.

The facts also show that the majority of the company's assets – including the three vessels themselves, front end loaders, pumps, steel ramps, steel props, barges, office equipment, battery packs, tug boat engines, and other various equipment – have all been classified by VDSC itself as "Louisiana assets." In 2003, VDSC's tax return listed such assets in the amount of $1,339,692.00 The only assets that VDSC designated as "Mississippi assets" on the 2003 tax return are several lawnmowers and chain saws, office furniture and equipment, one vehicle, and a radio tower. These

assets totaled $30,995.00.

The facts further show that the majority of VDSC's total sales in Louisiana in 2002, the year before this lawsuit was filed, were $713,869, while VDSC's total sales in Mississippi during the same time period were $497,114.

VDSC has ties to both Natchez and Vidalia, being affiliated with both Chambers of Commerce. Given that VDSC uses its Natchez business address on all advertisements, correspondence, and invoices, all potential and existing customers contact VDSC at its offices in Natchez. Nevertheless, the services for which these customers contact the company are performed in Vidalia, Louisiana. Furthermore, virtually all of VDSC's employees (except for Bettye M. Jenkins and Virginia Hodgens, two part-time workers who work only in the office behind the Jenkins family home in Natchez) perform their work for the company in Vidalia, Louisiana.

In light of the foregoing, it is clear that VDSC's assets, employees, and the bulk of income-generating activity are located in Vidalia, Louisiana.

### *Conclusion*

Considering the foregoing, this Court concludes that VDSC is not a far-flung corporation, as its activities are not "dispersed to the point that no place in which the corporation conducts business or activities can be denoted principal," nor is it a corporation akin to a holding company which does business in multiple locations. Rather, VDSC is a company with its executive offices in one state and its operational activities in another state. VDSC's operational activities in Louisiana – the towing, repair, and maintenance of barges – outweigh the primarily passive activities and formulation of overall policy in Mississippi. Thus, this Court finds that the place of VDSC's active and labor-intensive operations – Vidalia, Louisiana – is its principal place of business. As such,

VDSC is a citizen of Louisiana, and there is no complete diversity of citizenship among the parties. Consequently, this court does not have subject matter jurisdiction over this case and all claims are DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _9_ day of _October_, 2007.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE